UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATHANIEL DOMINIC SWANIGAN,

|  |  |
|---|---|
| Petitioner, | Case No. 18-cv-12787 |
| v. | |
| CATHERINE BAUMAN, | Stephanie Dawkins Davis<br>United States District Judge |
| Respondent. | |

_____/

## OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Nathaniel Dominic Swanigan, a state prisoner in the custody of the Michigan Department of Corrections, filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. He challenges his Michigan convictions for armed robbery, Mich. Comp. Laws § 750.529, possession of a firearm during the commission of a felony (felony-firearm), Mich. Comp. Laws § 750.227b, and resisting or obstructing a police officer, Mich. Comp. Laws § 750.81d(1).

Petitioner alleges as grounds for relief that (1) the trial court's failure to instruct the jury on certain lesser offenses to armed robbery deprived him of his constitutional rights, (2) his sentencing guidelines were erroneously scored, and (3) his trial attorney was constitutionally ineffective. *See* Pet., ECF No. 1, PageID.4, 10-16. Respondent Catherine Bauman urges the Court to deny the petition

because: (1) there is no constitutional right to instructions on lesser-included offenses, and the lesser-included offenses that Petitioner requested are not lesser-included offenses of armed robbery; (2) Petitioner's sentencing claims are not cognizable on habeas review; and (3) Petitioner's ineffective assistance claims are either unexhausted or the state court's decision on the claims did not involve an unreasonable application of Supreme Court precedent.  *See* Answer in Opp'n to Pet. for Writ of Habeas Corpus, ECF No. 8, PageID.84-85.  Petitioner did not file a reply to the Answer.

Having reviewed the pleadings and the record, the Court agrees that Petitioner procedurally defaulted one of his ineffectiveness claims and that the decision of the Michigan Court of Appeals was objectively reasonable. Accordingly, the Court will deny the habeas petition and decline to issue a certificate of appealability, but allow Petitioner to proceed *in forma pauperis* on appeal.

## I.     BACKGROUND

Petitioner was tried before a jury in Oakland County Circuit Court.  The Michigan Court of Appeals accurately summarized the evidence at trial as follows:

> This case involves an armed robbery that occurred at a BP gas station in Southfield on August 27, 2014.  On August 27, 2014, just after midnight, Mukhtar Almogari was working as a clerk at the gas station.  The gas station included a convenience store, which contained refrigerated cases, a freezer, and a microwave.  As

2

Almogari worked, three men—including defendant—
entered the convenience store.  Almogari testified that
defendant wore a white shirt, another man wore a red
shirt, and the third man wore a black shirt.  Almogari
testified that he recognized the men in the red and black
shirts because "every time they come they make
commotion [sic]."  Almogari testified that he did not
recognize defendant.

According to Almogari, the men "started to be loud and
they were doing whatever they wanted to do," including
taking items off the shelves and putting them into their
bags or pockets without paying for them.  Almogari
testified that defendant took a sandwich out of the cooler
and heated it using the microwave, but did not pay for it.
Almogari also testified that defendant took a bottle of
water.  Almogari testified that he may have given
defendant a bag "believing that he was going to pay me,"
but defendant did not pay.

Almogari testified that, when he told the men that they
had to pay for the goods, they "start[ed] screaming."
According to Almogari, the man wearing a red shirt was
"threatening" him, and defendant continued to "swear
and put things in his pocket."  Almogari testified that, at
some point, defendant approached Almogari at the
counter, and Almogari noticed that defendant had a gun.
Almogari testified that, when defendant got to the
protective glass that separated Almogari's cash register,
defendant threatened Almogari and raised his right arm,
moving it around at waist level.  Almogari also testified
that defendant "waived [sic] his gun" when Almogari
argued with one of the other men.  However, according
to Almogari, defendant's gun was always pointed
downward.  Almogari testified that he felt "scared" but
that he did not believe defendant would hurt him.
According to Almogari, he had the ability to lock the
doors to the store from where he sat behind the counter,
but one of the men held the door to the store open
throughout the incident.  Almogari testified that he called

911 to report the crime, and when he called 911, the men "became even more chaotic." Almogari testified that the man in the red shirt paid him one dollar, but it was not enough to cover everything that was stolen. Eventually, the men left the gas station. Almogari testified that as defendant was leaving, he took a full box of candy bars. Almogari testified that the police arrived within five minutes.

Police eventually located defendant and two other men in the parking lot of a nearby apartment complex. Defendant attempted to jump over a series of fences in the backyards of several houses. However, police ultimately apprehended defendant. Specifically, an officer testified that he encountered defendant in a parking lot. According to the officer, defendant refused to stop after repeated commands so the officer deployed a Taser onto defendant. The officer indicated that, even after using the Taser, defendant refused to comply with orders to "stay on the ground," and "kept trying to get up off the ground." Two officers struggled with and ultimately handcuffed defendant and took him into custody.

After defendant was in custody, police located a firearm on the ground near a wall that defendant jumped over. At the police department, defendant informed police that he drank "some margaritas that night" and went to a nightclub with his friends. Defendant stated that he went to Woodland Arms apartments to meet a woman and that defendant denied being at the gas station at all.

Defendant testified that he did not remember much from the night of August 27, 2014. According to defendant, he went to a bar with friends, drank "three, four cups of liquor," and took some type of pill. Defendant did not remember going to the gas station, and he testified, "I probably paid for my stuff because I had money." Defendant testified that the next thing he remembered

> after drinking alcohol at the bar was "being chased by the
> police," and ultimately hit with a Taser.

*People v. Swanigan*, No. 327456, 2016 WL 5599395, at *1-2 (Mich. Ct. App. Sept. 29,

2016) (unpublished).

On the first count, the trial court instructed the jury on armed robbery and

unarmed robbery, but on March 9, 2015, the jury found Petitioner guilty, as

charged, of armed robbery, felony firearm, and resisting or obstructing a police

officer. *See* 3/9/15 Trial Tr. at 48-49, ECF No. 9-4, PageID.236-237. The trial

court subsequently sentenced Petitioner to a term of nine to twenty years in prison

for the robbery conviction, a consecutive term of two years in prison for the

felony-firearm conviction with 226 days of credit, and 226 days for the resisting

and obstructing conviction with 226 days credit. *See* 4/10/15 Sentencing Tr. at 5,

ECF No. 9-5, PageID.243; *see also* Judgment of Sentence, ECF No. 9-6,

PageID.264-265.

Petitioner appealed his convictions and sentences. His appellate attorney

raised a single claim about the trial court's denial of his request for jury

instructions on the lesser offenses of felonious assault and brandishing a firearm.

*See* Defendant-Appellant's Brief on Appeal, ECF No. 9-6, PageID.268-269. In a

*pro se* supplemental brief, Petitioner argued that he was deprived of his

constitutional rights because his sentencing guidelines were erroneously scored,

and he was deprived of effective assistance of counsel. *See* Standard 4 Brief, ECF

5

No. 9-6, PageID.304-307.  More specifically, he claimed that:  (1) offense variable 1 of the Michigan  sentencing guidelines was improperly scored at fifteen points, and offense variable 19 was improperly scored at ten points; and (2) trial counsel deprived him of his right to effective assistance by failing to challenge (a) the in-court identification and (b) the trial court's jury instruction on the assault element of armed robbery.  *Id*. at PageID.308-318.  The Michigan Court of Appeals adjudicated all of these claims on the merits and affirmed Petitioner's convictions and sentences in an unpublished, *per curiam* opinion.  *See Swanigan*, 2016 WL 5599395.

With one exception, Petitioner raised the same three claims in an application for leave to appeal in the Michigan Supreme Court.  He did not raise the sub-claim about trial counsel's failure to object to the jury instruction on armed robbery.  *See* Pro Per Criminal Application for Leave to Appeal in the Michigan Supreme Court, ECF No. 9-7, PageID.345-359.  On June 27, 2017, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the questions presented to the court.  *See People v. Swanigan*, 500 Mich. 1021; 896 N.W.2d 444 (2017).  On September 7, 2018, Petitioner filed his habeas corpus petition.

## II.   STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires prisoners who challenge "a matter 'adjudicated on the merits in State

court' to show that the relevant state court 'decision' (1) 'was contrary to, or

involved an unreasonable application of, clearly established Federal law,' or (2)

'was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191

(2018) (quoting 28 U.S.C. § 2254(d)).  The Supreme Court has explained that

> a state court decision is "contrary to [the Supreme
> Court's] clearly established precedent if the state court
> applies a rule that contradicts the governing law set forth
> in [Supreme Court] cases" or "if the state court confronts
> a set of facts that are materially indistinguishable from a
> decision of [the Supreme] Court and nevertheless arrives
> at a result different from [Supreme Court] precedent."

*Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S.

362, 405-406 (2000)) (alterations added).

> "Under the 'unreasonable application' clause, a federal
> habeas court may grant the writ if the state court
> identifies the correct governing legal principle from [the
> Supreme] Court's decisions but unreasonably applies that
> principle to the facts of the prisoner's case." *Id.,* at 413,
> 120 S.Ct. 1495.  The "unreasonable application" clause
> requires the state court decision to be more than incorrect
> or erroneous. *Id.,* at 410, 412, 120 S.Ct. 1495.  The state
> court's application of clearly established law must be
> objectively unreasonable. *Id.,* at 409, 120 S.Ct. 1495.

*Id.* at 75.   "AEDPA thus imposes a 'highly deferential standard for evaluating

state-court rulings,' and 'demands that state-court decisions be given the benefit of

the doubt[.]'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal and end citations

omitted).

7

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "[o]nly an 'objectively unreasonable' mistake, . . . , one 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement,' slips through the needle's eye of § 2254." *Saulsberry v. Lee*, 937 F.3d 644, 648 (6th Cir.) (quoting *Richter*, 562 U.S. at 103), *cert. denied*, 140 S. Ct. 445 (2019). "That's a 'high bar' to relief, which 'is intentionally difficult to meet.'" *Kendrick v. Parris,* 989 F.3d 459, 469 (6th Cir. 2021) (quoting *Woods v. Donald*, 575 U.S. 312, 316 (2015)).

## III.   DISCUSSION

### A.   The Jury Instructions

Petitioner first alleges that the trial court abused its discretion and deprived him of due process and a fair trial when it denied his request to instruct the jury on felonious assault, Mich. Comp. Laws § 750.82, and brandishing a firearm in public, Mich. Comp. Laws § 750.234e. Petitioner contends that the testimony at trial supported the conclusion that felonious assault was a necessarily included offense of armed robbery. *See* Pet., ECF No. 1, PageID.10-13. The trial court, however, disagreed and concluded that felonious assault and brandishing a firearm

8

were not necessarily included lesser offenses of armed robbery.  *See* 3/5/15 Trial

Tr. at 214-15, ECF No. 9-3, PageID.223.  The Michigan Court of Appeals reached

the same conclusion on direct review.  *See Swanigan*, 2016 WL 5599395, at \*2-\*5.

This Court finds no merit in Petitioner's claim because the Constitution does

not require state trial courts to instruct juries on offenses that are not lesser-

included offenses of the charged crime under state law.  *Hopkins v. Reeves*, 524

U.S. 88, 90-91 (1998).  The "failure to instruct on a lesser included offense in a

noncapital case is not 'such a fundamental defect as inherently results in a

miscarriage of justice or an omission inconsistent with the rudimentary demands of

fair procedure.'"  *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002) (quoting *Bagby v.

Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (*en banc*)).  "Declining to grant a

request to 'present a state-created, not federally required, defense is . . . at worst . .

. an error of state law; and . . . . a violation of state law does not violate the

Constitution."  *Keahey v. Marquis*, 978 F.3d 474, 479 (6th Cir. 2020) (quoting

*Eaglin v. Welborn*, 57 F.3d 496, 501 (7th Cir. 1995) (*en banc*)), *petition for cert.

filed* (U.S. Mar. 16, 2021).

Even if Petitioner's claim were cognizable here, the Michigan Court of

Appeals thoroughly analyzed Petitioner's claim on direct review and determined

that felonious assault and brandishing a firearm were not necessarily-included

offenses of armed robbery.  The Court of Appeals pointed out that both lesser

offenses contained an element not included in armed robbery and, therefore, the trial court did not err in failing to read jury instructions on felonious assault and brandishing a firearm.  This Court is bound by the state court's interpretation of state law, *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005), and because the Court of Appeals concluded that the trial court correctly refused to instruct the jury on felonious assault and brandishing a firearm, Petitioner has no right to relief on his claim.

      B.    <u>The Sentencing Guidelines</u>

Petitioner next alleges that the state trial court erroneously scored offense variables one and nineteen of the Michigan sentencing guidelines.  According to Petitioner, if the offense variables had been scored correctly, his sentencing guidelines would have been 81 to 175 months, instead of 108 to 180 months.  He concludes that his sentence is constitutionally infirm and that he was deprived of his rights under the Fifth and Fourteenth Amendments to the Constitution.  *See* Pet., ECF No.1, PageID.14-15.  The Michigan Court of Appeals rejected Petitioner's claim on direct review and concluded that the trial court did not err when assessing fifteen points for Offense Variable 1 and ten points for Offense Variable 19.  *Swanigan*, 2016 WL 5599395, at *5.

The contention that the trial court incorrectly scored the state sentencing guidelines is not a cognizable claim in a habeas action because a state court's

10

application and interpretation of state sentencing guidelines is "a matter of state

concern only," *Howard v. White*, 76 Fed. Appx. 52, 53 (6th Cir. 2003), and

"federal habeas corpus relief does not lie for errors of state law," *Lewis v. Jeffers*,

497 U.S. 764, 780 (1990).  Thus, the only question is whether the trial court

violated Petitioner's constitutional right to due process when the scoring the

offense variables.

A sentence violates due process of law if the trial court relied on extensively

and materially false information that the defendant had no opportunity to correct

through counsel.  *Townsend v. Burke*, 334 U.S. 736, 741 (1948).  To obtain relief,

Petitioner must show that his sentence was "founded at least in part upon

misinformation of constitutional magnitude."  *United States v. Tucker*, 404 U.S.

443, 447 (1972).   For the following reasons, the Court finds that Petitioner has

failed to show that the trial court relied on misinformation of constitutional

magnitude.

1.   *Offense Variable 1:  Aggravated Use of a Weapon*

Petitioner received fifteen points for Offense Variable 1, but he claims that

he should have received only five points.  *See* Pet., ECF No. 1, PageID.14.

Offense Variable 1 of the Michigan sentencing guidelines is aggravated use of a

weapon.  Mich. Comp. Laws § 777.31(1).  A score of fifteen points is appropriate

if "[a] firearm was pointed at or toward a victim[.]"  Mich. Comp. Laws

11

§ 777.31(1)(c).  Five points is the correct score if "[a] weapon was displayed or implied."  Mich. Comp. Laws § 777.31(1)(e).

Almogari testified that the gun was pointed down.  3/5/15 Trial Tr. at 103, ECF No. 9-3 at PageID.195.  But he also testified that Petitioner approached the glass divider between him and Petitioner and threatened Almogari with the gun by raising his right arm and moving his arm around at waist level.  *Id*. at 90-91, PageID.192.  Almogari also testified that Petitioner waved the gun while Almogari was arguing with Petitioner's friend.  *Id*. at p. 102, PageID.195.  Although he did not think that Petitioner was going to hurt him, the gun scared him, and he stopped working at the gas station as a result of the incident.  *Id*. at p. 80, PageID.189.

One could conclude from Almogari's testimony that Petitioner did more than merely display the gun and that he made aggravated use of a weapon. Therefore, the Michigan Court of Appeals did not rely on misinformation of a constitutional magnitude when it concluded that the trial court did not clearly err in assessing fifteen points for Offense Variable 1.

    2.    *Offense Variable 19: Interference with the Administration of Justice*

Petitioner received ten points for Offense Variable 19.  He argues that he should not have received any points for that offense variable because he was merely running from the police and, according to him, flight from the police does

not constitute interference or attempted interference with justice.  *See* Pet., ECF No. 1, PageID.15.

Ten points is an appropriate score for Offense Variable 19 if "[t]he offender . . . interfered with or attempted to interfere with the administration of justice[.]" Mich. Comp. Laws § 777.49(c).  No points would be proper if the offender did not "interfere with or attempt to interfere with the administration of justice[.]"  Mich. Comp. Laws § 777.49(d).

David McCormick, a Southfield police officer, testified that on the night in question, he moved his surveillance vehicle to an area where he thought the suspects might run.  He saw Petitioner come over two fences.  Eventually, Petitioner got close to where McCormick was parked.  McCormick then got out of his car, identified himself, and said, "Police, stop."  Despite his command and the fact that he was wearing a hat with the word "police" on it, Petitioner made a fist and approached McCormick in a fighting stance.  McCormick then tasered Petitioner, but Petitioner tried to get up from the ground even after being hit with the taser.  McCormick had to taser Petitioner again to keep him on the ground. Petitioner continued to resist arrest after a uniformed officer arrived by putting his hands under his body as he laid on his stomach.  *See* 3/5/15 Trial Tr. at 149-160, ECF No. 9-3, PageID.207-209.  According to McCormick, Petitioner resisted arrest two times:  first, by not stopping on command and then aggressively

approaching McCormick; and second, by holding his hands under his body and forcing the officers to pull his hands from under his body to handcuff him.  *Id*. at 171-172, PageID.212.

The Michigan Court of Appeals concluded from this testimony that "the trial court did not clearly err in finding facts to support scoring [Offense Variable] 19 at 10 points."  *Swanigan*, 2016 WL 5599395, at *5.   In fact, under state law, the phrase "'interfered with or attempted to interfere with the administration of justice' is a broad phrase" that "encompasses more than just the actual judicial process." *People v. Barbee*, 470 Mich. 283, 286-88 (2004).

"Law enforcement officers are an integral component in the administration of justice, regardless of whether they are operating directly pursuant to a court order."  *Id*., 470 Mich. at 288.  And fleeing from the police, contrary to an order to freeze, is an act that "hampers, hinders, or obstructs the process of administering judgment of individuals or causes by judicial process." *People v. Hershey,* 303 Mich. App. 330, 343-44 (2013).

The Michigan Court of Appeals did not rely on misinformation of a constitutional magnitude when it affirmed the trial court's score of ten points for Offense Variable nineteen.  Petitioner, therefore, has no right to relief on his claim.

C.     Trial Counsel

Petitioner's third and final claim alleges that he was deprived of his Fifth

Amendment right to due process and his Sixth Amendment right to effective

assistance of trial counsel.  He contends that trial counsel was ineffective for

failing to object to (1) the scoring of Offense Variables 1 and 19, (2) the in-court

identification of him during the preliminary examination, and (3) the jury

instruction on armed robbery.  *See* Pet., ECF No. 1, PageID.16.  The Michigan

Court of Appeals rejected all of these claims.

The clearly established federal law on a claim of ineffective assistance of

counsel is *Strickland v. Washington,* 466 U.S. 668 (1984).  *Cullen v. Pinholster*,

563 U.S. 170, 189 (2011).  The Supreme Court explained in *Strickland* that "the

proper standard for attorney performance is that of reasonably effective

assistance." *Strickland*, 466 U.S. at 687.  To establish that counsel's assistance

was so defective as to require reversal of a conviction, a convicted person must

show that his attorney's performance was deficient and that the deficient

performance prejudiced the defense.  *Id*.  Unless the convicted individual "makes

both showings, it cannot be said that the conviction . . . resulted from a breakdown

in the adversary process that renders the result unreliable." *Id*.

An attorney's performance is deficient if "counsel's representation fell

below an objective standard of reasonableness." *Id*. at 688.  A defendant must

show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.  The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 111-12 (quoting *Strickland*, 466 U.S. at 693).

1.    *Failure to Object to the Scoring of the Offense Variables*

Petitioner alleges first that defense counsel was ineffective for failing to object to the scoring of Offense Variables 1 and 19.  *See* Pet., ECF No. 1, PageID.16.  The Michigan Court of Appeals found no merit in this claim because the trial court did not clearly err in finding facts to support the scoring of the offense variables and, therefore, Petitioner could not show that counsel was ineffective in failing to object to the scoring.  *Swanigan*, 2016 WL 5599395, at *6.

The state appellate court's conclusion is objectively reasonable because, as explained above, there was factual support for the fifteen points assessed for

16

Offense Variable 1 (aggravated use of a firearm):  Almogari testified that

Petitioner lifted and waved the gun and threatened him.  Moreover, Petitioner has

not alleged that ten fewer points for Offense Variable 1 would have made a

difference in the sentencing guidelines.  Therefore, even if defense counsel's

performance was deficient, Petitioner has failed to prove *Strickland's* "prejudice"

prong.

As noted above, there was also considerable factual support for scoring

Offense Variable 19 at ten points because an officer testified that Petitioner did not

stop when the officer commanded Petitioner to stop, that Petitioner approached the

officer in a fighting stance, and that Petitioner tried to prevent two officers from

handcuffing him even after he had been shot with a taser and was lying on the

ground.

Defense counsel's failure to object to the scoring of the offense variables did

not amount to deficient performance, and the alleged deficiencies did not prejudice

Petitioner.

2.      *Failure to Object to the In-Court Identification*

Petitioner alleges that defense counsel should have objected to the in-court

identification of him at the preliminary examination because the identification was

unnecessarily suggestive.  Petitioner contends that the victim could not describe

the suspect during the 911 call, and there was no line-up before the in-court

identification.  *See* Pet., ECF No. 1, PageID.16.  The Michigan Court of Appeals

agreed that the pretrial identification was suggestive, but it concluded that the

identification was not constitutionally defective.  *See Swanigan*, 2016 WL

5599395, at *6-*8.

a.      Clearly Established Federal Law on In-Court<br>Identifications

By now, it is abundantly clear that "[t]he Constitution . . . protects a

defendant against a conviction based on evidence of questionable reliability . . . ."

*Perry v. New Hampshire*, 565 U.S. 228, 237 (2012).  All in-court identifications

involve some element of suggestion, *id*. at 244, but an identification procedure

violates due process of law only if the confrontation was "'unnecessarily

suggestive and conducive to irreparable mistaken identification.'"  *Neil v. Biggers,*

409 U.S. 188, 196 (1972) (quoting *Stovall v. Denno*, 388 U.S. 293, 302 (1967)).

> If there is "a very substantial likelihood of irreparable
> misidentification," *Simmons v. United States*, 390 U.S.
> 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the
> judge must disallow presentation of the evidence at trial.
> But if the indicia of reliability are strong enough to
> outweigh the corrupting effect of the police-arranged
> suggestive circumstances, the identification evidence
> ordinarily will be admitted, and the jury will ultimately
> determine its worth.

*Perry*, 565 U.S. at 232.  The United States Court of Appeals for the Sixth Circuit

follows a two-part analysis when evaluating whether an identification procedure

18

was so impermissibly suggestive as to give rise to a substantial likelihood of

irreparable misidentification.

> The court first considers whether the procedure was
> unduly suggestive. *Wilson v. Mitchell*, 250 F.3d 388, 397
> (6th Cir. 2001); *Ledbetter v. Edwards*, 35 F.3d 1062,
> 1070-71 (6th Cir. 1994). The court must decide if the
> procedure itself steered the witness to one suspect or
> another, independent of the witness's honest recollection.
> *Wilson*, 250 F.3d at 397. "The defendant bears the
> burden of proving this element." *Ledbetter*, 35 F.3d at
> 1071 (citation omitted). If the procedure was suggestive,
> the court then determines whether, under the totality of
> the circumstances, the identification was nonetheless
> reliable and therefore admissible. *Wilson*, 250 F.3d at
> 397 (citation omitted); *Ledbetter*, 35 F.3d at 1071.

*Cornwell v. Bradshaw*, 559 F.3d 398, 413 (6th Cir. 2009).

### b.     Application of the Law

In the present case, the prosecutor asked Almogari at the preliminary

examination whether there was "a particular person who . . . did this event." *See*

10/1/14 Prelim. Examination at 10, ECF No. 9-2, PageID.151. Almogari

responded, "I remember this guy right there." *Id*. When asked to point to the

person or describe something the person was wearing, Almogari repeated. "I

remember this guy[,] he's here. . . . This is the guy who had the gun." *Id*. at pp.

10-11, PageID.151-152.

However, when the trial court asked Almogari to describe what the person

currently was wearing, Almogari identified the person in orange clothing. *Id*. at

p.11, PageID.152.  It appears from this comment that Petitioner was probably

wearing orange jail clothing, and because the trial court had asked Petitioner to

step next to his lawyer when Petitioner first entered the courtroom, *id*. at p.3,

PageID.144, Petitioner was probably seated next to defense counsel when

Almogari identified him.  Given these circumstances, the identification was

unnecessarily suggestive.

Nevertheless, there is not a substantial likelihood of irreparable

misidentification.  Although Petitioner alleges that Almogari could not describe

him to the 911 operator, Almogari testified through an interpreter at trial, and he

explained that he could not speak English 100%.  *See* 3/5/15 Jury Trial at 72,

PageID.187.  He also testified that he did not understand the 911 operator when

she asked for a description of the suspects.  *Id.* at pp. 104-105, PageID.195-196.

Additionally, as the Michigan Court of Appeals accurately pointed out,

> Almogari was able to observe defendant at the time of
> the robbery.  Almogari testified that he saw defendant
> enter the convenience store portion of the gas station
> along with two other men, and he described the clothing
> worn by all three men at trial.  Almogari testified that he
> saw defendant and the other men take various items from
> around the store.  Specifically, Almogari testified that
> defendant took a sandwich out of the cooler and heated it
> using the microwave.  This testimony indicates that
> defendant was in the gas station within Almogari's sight
> for at least enough time to heat a meal.  Almogari also
> testified that defendant approached his cashier station and
> that he gave defendant a bag.  This testimony indicates
> that Almogari was able to observe defendant from a close

20

> distance, as Almogari was close enough to defendant to
> hand him a bag.  Moreover, Almogari reviewed the
> surveillance video at trial and identified defendant in the
> video.

*Swanigan*, 2016 WL 5599395, at *7.  Almogari's identification of Petitioner was

reliable.  Therefore, it was admissible, and defense counsel was not ineffective for

failing to object to the evidence.

### 3.    *Failure to Object to a Jury Instruction*

In his final claim about defense counsel, Petitioner alleges that counsel

should have objected to the jury instruction on armed robbery.  Petitioner asserts

that the instruction was inadequate because the trial court merely defined the

assault element of armed robbery as putting another person in fear.  According to

Petitioner, the court omitted the attempted-battery theory of assault and failed to

instruct the jury that the victim must be in reasonable apprehension of an

immediate battery.  *See* Pet., ECF No. 1, PageID.16.

The Michigan Court of Appeals determined on review of Petitioner's claim

that the instruction on armed robbery sufficiently defined the first element of

armed robbery, that the instruction fairly presented the issues to be tried, and that

the instruction sufficiently protected Petitioner's rights.  *Swanigan*, 2016 WL

5599395, at *8.  The Court of Appeals concluded that defense counsel was not

ineffective for failing to object to the instruction.  *Id*.

a.    Exhaustion/Procedural Default

Respondent asserts that Petitioner's sub-claim is procedurally defaulted because he did not raise the claim in the Michigan Supreme Court, and he no longer has an available remedy to exhaust.  *See* Answer in Opp'n to Pet. for Writ of Habeas Corpus, ECF No. 8, PageID.85, 110-111, 125.  The Court agrees with Respondent.

Petitioner's failure to raise his claim in the Michigan Supreme Court when he had the opportunity to do so implicates the exhaustion and procedural default requirements in habeas corpus cases.  *Gray v. Netherland*, 518 U.S. 152, 161 (1996).  The doctrine of exhaustion of state remedies requires state prisoners to give the state courts an opportunity to act on their claims before they present them to a federal court in a habeas corpus petition.  *See* 28 U.S.C. § 2254(b)(1), (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

The exhaustion requirement is satisfied if the prisoner "invok[es] one complete round of the State's established appellate review process," including a petition for discretionary review in the State's highest court "when that review is part of the ordinary appellate review procedure in the State."  *O'Sullivan,* 526 U.S. at 845, 847.  Thus, to properly exhaust state remedies, a prisoner must fairly present the factual and legal basis for each of his or her claims to the state court of

appeals and to the state supreme court before raising the claims in a federal habeas corpus petition. *Wagner v. Smith*, 581 F.3d 410, 414-15 (6th Cir. 2009).

The exhaustion requirement, however, refers only to remedies still available at the time of the federal petition; it is satisfied if the habeas petitioner's claims are now procedurally barred under state law. *Gray*, 518 U.S. at 161. Stated differently,

> [e]xhaustion is a problem only if the state still provides a remedy for the habeas petitioner to pursue, thus providing the state courts an opportunity to correct a constitutionally infirm state court conviction. If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts.

*Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see also Carruthers v. Mays*, 889 F.3d 273, 288 (6th Cir. 2018) (stating that, when a claim is unexhausted, but no state remedy remains available, the claim is procedurally defaulted, and a federal habeas court may not review the claim without a showing of cause and actual prejudice), *cert. denied*, 139 S. Ct. 1173 (2019).

b.      Application of the Doctrines

Petitioner raised his claim about defense counsel's failure to object to the jury instructions in the Michigan Court of Appeals, but not in the Michigan Supreme Court, and the 56-day deadline for appealing to the Michigan Supreme

Court[1] has expired. Therefore, Petitioner no longer has a state remedy to exhaust, and his claim must be treated as exhausted, but procedurally defaulted. He must show "cause" for his procedural error and actual prejudice to have his claim heard on the merits now. Petitioner has not alleged "cause" for his failure to raise his claim in the Michigan Supreme Court, and the Court need not determine whether Petitioner was prejudiced by his procedural error because he has not shown "cause." *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000).

In the absence of "cause and prejudice," a habeas petitioner may pursue a procedurally defaulted claim if he can demonstrate that a "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991)). "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

The actual-innocence gateway "is a narrow one" that "'applies to a severely confined category: cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Davis v. Bradshaw*, 900 F.3d 315, 326 (6th Cir. 2018) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013)), *cert. denied*, 139 S. Ct. 1619 (2019). "To be credible, [a

---

[1] *See* Mich. Ct. R. 7.305(C)(2).

claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner has not presented the Court with any new evidence of actual innocence. Therefore, a miscarriage of justice will not result from the Court's failure to adjudicate his claim on the merits.

## IV.    CONCLUSION

The third sub-claim of Petitioner's ineffectiveness claim is procedurally defaulted, and the state appellate court's adjudication of Petitioner's other claims on the merits was objectively reasonable. The state court's decision was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable application of the facts. The state court's decision also was not so lacking in justification that there was an error beyond any possibility for fairminded disagreement. Accordingly, the Court denies the habeas corpus petition.

The Court also declines to issue a certificate of appealability because reasonable jurists could not disagree with the Court's resolution of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529

U.S. 473, 484 (2000)).  Nevertheless, because the Court granted Petitioner permission to proceed *in forma pauperis* in this Court, and because an appeal could be taken in good faith, petitioner may proceed *in forma pauperis* on appeal if he appeals this decision.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

 **IT IS SO ORDERED**.

      s/Stephanie Dawkins Davis
      Stephanie Dawkins Davis
      United States District Judge

Dated: September 23, 2021

26